**MANATT, PHELPS & PHILLIPS, LLP**
Kenneth D. Friedman
7 Times Square
New York, New York 10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant*
*Smarty, LLC and SmartyStreets, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------X

ATLAS DATA PRIVACY
CORPORATION, *as assignee of individuals*
*who are Covered Persons, et al.,* JANE
DOE-1, *a law enforcement officer*, JANE
DOE-2, *a law enforcement officer*, EDWIN
MALDONADO, SCOTT MALONEY
JUSTYNA MALONEY, PETER
ANDREYEV, and WILLIAM SULLIVAN,

Civil Case No.:

**DEFENDANT**
**SMARTY, LLC'S AND**
**SMARTYSTREETS, LLC'S**
**<u>NOTICE OF REMOVAL</u>**

Plaintiffs,

-against-

SMARTY, LLC, SMARTYSTREETS, LLC,
RICHARD ROES 1-10, *fictitious names of*
*unknown individual* and ABC COMPANIES
1-10, fictitious names of unknown entities,

Defendant.

-----------------------------------------------X

TO:    The Clerk of the Court
        U.S. District Court
        District of New Jersey
        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey 08101

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1367, 1441, 1446, and 1453(b), defendant Smarty, LLC *d/b/a* SmartyStreets, LLC[1] ("Defendant") hereby removes the above-captioned civil action and all claims and causes of action therein from the Superior Court of New Jersey, Mercer County, Law Division, where it had been assigned the case number MER-L-000310-24, to the United States District Court for the District of New Jersey. The Removal is proper for the reasons that follow.

## D.N.J. LOCAL CIVIL RULE 10.1 STATEMENT

1.       The plaintiffs in this action are Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter Andreyev, and Williams Sullivan ("Individual Plaintiffs," and together with Atlas, "Plaintiffs"). The address for Atlas is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302. The precise addresses for the Individual Plaintiffs are unknown to the removing parties.

2.       Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of PEM Law LLP, 1 Boland Dr Suite 101, West Orange, NJ 07052, and John A. Yanchunis, Esq., Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

---

[1] SmartyStreets, LLC, improperly sued here, is a registered DBA of Smarty, LLC.

3.    Defendant is headquartered at, and has its principal place of business at 1476 Sandhill Rd., Orem, UT 84058, and is represented by Kenneth D. Friedman of Manatt, Phelps, and Phillips, LLP, 7 Times Square, New York, NY 10036; Brandon P. Reilly (*pro hac vice* application to be submitted) of Manatt, Phelps, and Phillips, LLP 695 Town Center Drive, 14th Floor, Costa Mesa, CA 92626; and Kayla LaRosa (*pro hac vice* application to be submitted) of Manatt, Phelps and Phillips, LLP, One Beacon Street, Suite 28, Boston, MA 02018.

## I.    **INTRODUCTION**

4.    This action is one of over 140 lawsuits filed by Atlas and its counsel alleging violations of New Jersey's Daniel's Law, N.J.S.A. 47:1A-1, *et seq.* and N.J.S.A. 56:8-166.1 ("Daniel's Law"), a recently amended statute intended to help judges, law enforcement officers, child protective investigators, prosecutors, and immediate family members residing with them prevent their home addresses and unpublished home telephone numbers from being "disclosed" under the meaning of the law.  The statute intends to allow such individuals ("covered persons") to request that a business or website not "disclose or re-disclose on the Internet or otherwise make available" covered information  and provides that the recipient of such a request must comply within 10 business days, subject to "actual damages but not less than liquidated damages computed at the rate of $1,000 for each violation" of the statute.  N.J.S.A. § 56:8-166.1(c)(1).

5.      While Daniel's Law was passed with the critical purpose of protecting covered persons and ensuring that their private information is removed from the internet, Atlas's lawsuits have little do with this goal.  Rather, Atlas's decision to bombard the judicial system with over 140 lawsuits reflects a profit-motivated scheme to monetize Daniel's Law, through (i) incorporating in Delaware after the passage of Daniel's Law in New Jersey, (ii) recruiting covered persons to register with Atlas online; (iii) having those covered persons purport to assign their present and future claims to Atlas under a 2023 amendment to Daniel's Law; (iv) selecting hundreds of businesses to be noticed under Daniel's Laws; (v) purporting to send thousands of automated requests *en masse* to these businesses on behalf of covered persons over a short period, with the aim of overwhelming the business and preventing it from processing the requests in time; and (vi) filing suit on behalf of those covered persons against these more than 140 businesses and seeking tens of millions of dollars in statutory damages, in addition to other damages and remedies, in each case.

6.      Atlas seeks to avoid federal jurisdiction by omitting any express reference to a class action or mass action procedure.  But jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") cannot be avoided by evasive pleading.  Where, as here, plaintiffs seek to assert nearly 15,000 individual claims in one action, the action is substantively a "class action" or "mass action" under

CAFA. Because this action seeks to proceed, in substance, as a "class action" or "mass action" under CAFA, and all of the jurisdictional requirements are otherwise met, this case is subject to federal jurisdiction under CAFA.

7.      This case is also subject to removal based on traditional diversity jurisdiction. The Individual Plaintiffs expressly allege that they work or reside in New Jersey. And Atlas's citizenship should be disregarded under applicable case law. *See infra* ¶¶ 71–75. The Court instead should consider the citizenship of the putative assignees (i.e., the purported covered persons)—who are alleged to work or reside in New Jersey and who seek to avail themselves of rights afforded to certain New Jersey individuals under a New Jersey state law. As such, there is complete diversity of citizenship between the Individual Plaintiffs (New Jersey) and Defendant (Utah) and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      Moreover, even were the Court to consider Atlas's citizenship ─ a Delaware corporation with offices in New Jersey ─ complete diversity is still present. Likewise, this Court may exercise personal jurisdiction over the parties because the Court's territorial jurisdiction embraces the location where the Superior Court action was filed.

9.      Accordingly, this Court has original subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2), and diversity jurisdiction, 28 U.S.C. § 1332(a); and this case may be removed under 28 U.S.C. §§ 1441, 1446, and 1453.

## II.    **PROCEDURAL BACKGROUND**

10.      On or about February 9, 2024, Atlas, as a purported assignee for the claims of 14,532 individuals (the putative "Assignors"), and the Individual Plaintiffs filed a complaint in the Superior Court of New Jersey Law Division, Mercer County, entitled *Atlas Data Privacy Corp., et al. v. Smarty, LLC, et al.*, Case No. MER-L-000310-24 (the "Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

11.      Defendant was served with the Complaint on June 26, 2024, at 3:30 pm local time. *Id.* at p. 1. *See also* the accompanying Declaration of Lori Kirkham dated July 26, 2024 ("Kirkham Decl.") ¶ 4.

12.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process and papers received by Defendant in the state court action are attached hereto as **Exhibit 1**.

13.      In the Complaint, Plaintiffs assert that Defendant violated Daniel's Law based on an alleged failure to timely process requests not to "disclose" the Individual Plaintiffs' and Assignors' home addresses and/or unpublished telephone number. (Ex. 1, Compl. ¶¶ 51-54.)

14.     Plaintiffs allege they are each entitled to recover from Defendant "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 for each violation,'" along with punitive damages, attorneys' fees, interest (pre- and post-judgment), and litigation costs.  (Ex. 1, Comp. ¶ 63.)  Plaintiffs also allege they are each entitled to "injunctive relief" with respect to the Plaintiffs' and the [Assignors'] protected information."  (*Id*.)

15.     Pursuant to 28 U.S.C. § 1446(d), Defendant is serving Plaintiffs' counsel with copies of this Notice of Removal, as well as filing a copy with the Clerk of the Superior Court of New Jersey, Mercer County, Law Division, as an exhibit to a Notice of Filing of Notice of Removal.

16.     Nothing in this Notice of Removal shall constitute a waiver of Defendant's rights to assert any defense or argument, or avail themselves of any substantive or procedural right, including, but not limited to, a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, as the case progresses.

17.     If the Court were to consider a remand, Defendant respectfully request that the Court issue an order to show cause why the case should not be remanded, giving the parties the opportunity to present briefing and argument in support of its position that this action is subject to removal. *See Dart Cherokee Basis Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

## III.   REMOVAL IS TIMLEY

18.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

Plaintiffs filed their Complaint on February 9, 2024, and served it on Defendant on

June 26, 2024.  (*See* Ex. 1; Kirkham Decl. ¶4.)  Defendant filed this Notice of

Removal within thirty (30) days of service as required by 28 U.S.C. § 1446(b).

## IV.   SUBJECT MATTER JURISDICTION EXISTS

19.       This action is removable pursuant to 28 U.S.C. § 1453(b). The Court

has original jurisdiction over the action under CAFA, 28 U.S.C. § 1332(d)(2), and

independently based on traditional diversity jurisdiction, 28 U.S.C. § 1332(a).

20.      Specifically, this Court has jurisdiction because (1) this action is

either a "class action" or a "mass action" under CAFA, *see* 28 U.S.C. § 1332(d)(2);

and separately, (2) the amount in controversy exceeds $75,000 and the action is

between citizens of different states, 28 U.S.C. § 1332(a).

### A.   CAFA "Class Action" Jurisdiction Exists.

21.       "Congress enacted [CAFA] to facilitate adjudication of certain class

actions in federal court." *Dart Cherokee*, 574 U.S. at 89. Accordingly, "CAFA's

'provisions should be read broadly, with a strong preference that interstate class

actions should be heard in a federal court.'"  *Id.* (quoting S. Rep. No. 109-14 at 43

(2005)); *see also Portillo v. Nat'l Freight, Inc*., 169 F. Supp. 3d 585, 589 (D.N.J.

2016) (CAFA "expressed a clear preference for qualifying class actions to be entertained in federal forums").

22.     A class action filed in state court is removable to federal district court under CAFA if: (1) the putative class includes more than 100 members, (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and (3) "any member of a class of plaintiffs" is diverse "from any defendant" in any one of three statutorily enumerated ways. 28 U.S.C. § 1332(d)(2).  The CAFA requirements are satisfied here.

### 1.     This action is a "class action" within the meaning of CAFA.

23.     This action is a "class action." CAFA provides:

> T]he term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action...

28 U.S.C. § 1332(d)(1)(B).  CAFA further provides "[t]his subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action."  28 U.S.C. § 1332(d)(8).

24.     New Jersey has a similar state rule which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4)

the representative parties will fairly and adequately protect the interests of the

class." N.J. Ct. R. 4:32.

25.     That the Complaint fails to cite any class action joinder rule does not

change the fact that the Complaint should be considered a "class action" under

CAFA.  If courts "interpreted 'any civil action filed under Rule 23' or a state-law

analogue to refer only to cases that specifically mention Rule 23 or a state-law

analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that

resembles a class action in all respects simply by omitting from the complaint the

name of the rule or statute under which she proceeds." *Williams v. Emps. Mut.*

*Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). "[A]llowing class-action plaintiffs to

avoid federal jurisdiction simply by omitting explicit reference to the class-action

rule they intend to proceed under would promote the kind of procedural gaming

CAFA was enacted to prevent."  *Id.*; *see also Badeaux v. Goodell*, 358 F. Supp. 3d

562, 567  (E.D. La. 2019) ("A lawsuit resembling a class action will not escape

CAFA jurisdiction simply because it omits the words 'class action' or does not

include the state rule or statute under which it proceeds as a class action.").

26.     Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional

requirements on its face, [courts] must cut through any pleading artifice to identify

whether the case is *in substance* an interstate class action."  *Erie Ins. Exch. by*

*Stephenson v. Erie Indem. Co*., 68 F.4th 815, 819 (3d Cir. 2023), *cert. denied sub*

*nom. Erie Indem. Co. v. Erie Ins. Exch*., No. 23-434, 2024 WL 759808 (U.S. Feb. 26, 2024) (emphasis added). The U.S. Supreme Court has warned "that courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'" *Erie Ins.*, 68 F. 4th at 819–20 (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)); *see Erie Ins. Exch. v. Erie Indem. Co*., 722 F.3d 154, 161 (3d Cir. 2013) ("[f]ailing to affix 'class action' to a pleading" cannot "deprive [the district court] of jurisdiction" under CAFA).

27.     Here, the Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co*., 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction). Plaintiffs' decision not to cite a Rule 23 analogue in the Complaint does not "disguise the true nature of the suit." *Id*.

28.     Atlas brings this suit only in its capacity as the purported "assignee of the claims of approximately 14,532 individuals."[2] (Ex. 1, Compl. ¶ 25.) As an

---

[2] That the 14,532 Assignors allegedly assigned their claims to Atlas is immaterial. "[F]ederal district courts have both the authority and the responsibility . . . to disregard [an] assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990).

alleged "assignee," Atlas purports to assert the 14,532 Assignors' individual

claims. *See* N.J.S.A. § 56:8-166.1(d) (an "[a]ssignee" is a "person or entity . . .

assigned, in writing, *a covered person's right* to bring a civil action for a violation

of" Daniel's Law (emphasis added)).

29.     In other words, Atlas does not bring any claim in its individual

capacity.  (*See generally* Ex. 1, Compl.)  Nor can it, as Atlas is not a "covered

person" under the statute. *See* N.J.S.A. § 56:8-166.1(d) (defining "[c]overed

person" as "an active, formerly active, or retired judicial officer, law enforcement

officer, or child protective investigator . . . , or prosecutor and any immediate

family member residing in the same household . . . .").

30.      In its capacity as assignee, Atlas purports to bring claims on behalf of

14,532 individuals (numerosity); alleges commonality among the claims (*see* Ex.

1, Compl. ¶¶ 44–56 ("Facts Common to All Counts")); and purports to present this

case as one in which it can litigate nearly 15,000 individual claims.  It would be

impossible, for example, to litigate each claim individually before a single jury

without raising Seventh Amendment concerns.  Further, Plaintiffs do not cite any

rule that would allow more than 14,532 claims to be joined in a single suit.  Thus,

the Complaint, in substance, pleads a class action.  *Cf.* N.J. Ct. R. 4:32; Fed. R.

Civ. P. 23.

31.     Accordingly, the Complaint qualifies as a "class action" under CAFA.

## 2.    The proposed class exceeds 100 members.

32.    The Complaint's allegations satisfy the first requirement for removal under CAFA: that the putative class includes more than 100 members. 28 U.S.C. § 1332(d)(5)(B).  Plaintiffs assert that they are bringing "approximately 14,532" putative Assignors' claims.  (Ex. 1, Compl. ¶ 25.)  Accepting the allegations in the Complaint as true, there are more than 100 proposed class members.[3]  *See, e.g.*, *Phillips v. Wellpoint, Inc.*, No. 10-cv-357, 2010 WL 4877718, at *2 (S.D. Ill. Nov. 23, 2010) (relying on allegation in plaintiff's complaint that "the proposed class will exceed 20,000 policyholders and group members" to support a finding of jurisdiction under CAFA).

## 3.    The amount in controversy exceeds $5 million.

33.    The Complaint's allegations satisfy the second requirement for removal under CAFA because the matter in controversy exceeds $5 million.[4]  28

---

[3] Defendant does not concede liability, appropriateness of class treatment, appropriateness of Plaintiffs' class definition, or the validity of Plaintiffs' claims for relief.

[4] Defendant also does not concede that they are liable for any relief requested in the Complaint (or at all).  *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual class members are aggregated to determine whether the matter in controversary exceeds $5 million. 28 U.S.C. § 1332(d)(6).

34. To meet the amount in controversy threshold, a notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020). The amount in controversy "is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). Further, federal jurisdiction is proper "where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," unless "it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).

35. A court may consider various forms of relief sought in the complaint to determine the amount in controversy, including damages, punitive damages, attorneys' fees, and the value of an injunction. *See, e.g.*, *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, No. 20-02349, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) ("When determining the amount in controversy, punitive damages and attorney's fees are part of the amount in controversy calculation." (citing

*Frederico*, 507 F.3d at 198–99)); *Ifill v. CVS Pharmacy*, No. 20-14818, 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021) ("[C]laims for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." (quoting *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008))); *USAA Cas. Ins. Co. v. CIT Bank, N.A.*, No. 17-7454, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018) (finding "the value of Plaintiff's injunction is likely well beyond the jurisdictional minimum," and thus the "Court is precluded from saying 'to a legal certainty' that Plaintiff cannot recover the requisite jurisdictional amount"), *report and recommendation adopted*, 2018 WL 2427123 (D.N.J. May 30, 2018).

36.    Plaintiffs seek—on behalf of each of the seven Individual Plaintiffs and the "approximately 14,532" putative Assignors (i.e., 14,539 individuals)— actual damages of "not less than liquidated damages computed at the rate of '$1,000 for each violation.'"[5]  (Ex. 1, Compl. ¶ 63.)  And each of the

---

[5] Defendant disputes any interpretation of Daniel's Law that would allow a single plaintiff to recover duplicative actual or statutory damages from multiple defendants for each "violation" of the law.  However, the potential for such a recovery per person must be considered in determining the amount in controversy for purposes of removal.  *See, e.g.*, *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019) (finding removal proper of a complaint asserting violations of the Illinois Biometric Privacy Act because plaintiff did not show that recoverable amount based on per violation theory was "legally impossible").  Defendant also disputes whether Plaintiffs are entitled to the alleged liquidated damages in the absence of actual injury and damages.

approximately 14,539 individuals is alleged to have suffered at least one "separate violation." (*See id.* ¶ 61.) As such, the alleged *minimum* aggregated statutory damages alone are 1,000 times 14,539 or $14,539,000. This well exceeds the $5 million minimum for CAFA.

37.    Further, Plaintiffs brought this suit against "Richard Roes 1–10 and ABC Companies 1–10," totaling 21 defendants in all. (*See* Ex. 1, Compl. ¶ 38.) Thus, according to the Complaint, each of the 14,539 individual claims in the Complaint seeks to recover "not less than" $1,000 in damages from each of the 21 defendants. Put differently, the Complaint alleges 315,898 total monetary claims, valued (according to Plaintiffs) at $1,000 per violation. Thus, the total statutory damages amount alleged in the Complaint readily exceeds the $5 million threshold for the aggregate amount in controversy.

38.    Plaintiffs additionally seek: (i) "punitive damages"; (2) "attorneys' fees, interest (pre and post judgment) and litigation costs"; (iii) "injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the [Assignors'] protected information wherever disclosed"; (iv) "equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law"; and (vii) "such other and further relief against Defendants as the Court deems

equitable and just." (Ex. 1, Compl. ¶ 63.) The amount of the requested punitive damages and attorneys' fees, and costs of compliance with Plaintiffs' requested injunctive relief, further increase the amount in controversy—potentially significantly, across the roughly 15,000 individuals on whose behalf Plaintiffs purportedly assert claims.

39.    Indeed, "[u]nder New Jersey law, punitive damages are capped at 'five times the liability of that defendant for compensatory damages or \$350,000, whichever is greater.'" *Harco*, 2020 WL 3287129, at *2 (quoting N.J.S.A. § 2A:15–5.14 (2014)). Thus, "[f]or purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Harco*, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 199). The liquidated damages (\$1,000) and corresponding assumed punitive damages (\$5,000) could therefore total \$6,000 for each claim, which against 21 defendants equals potential liquidated and punitive damages of \$126,000 for each individual claim. And \$126,000 per claim for more than 14,000 individuals results in alleged aggregate liquidated and punitive damages that far exceed \$5 million.

40.    In addition, "[w]hen determining the amount in controversy, . . . attorney's fees are part of the amount in controversy calculation." *Harco*, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 198–99). The Third Circuit has awarded attorneys' fees of 30 percent of a class judgment. *See Frederico*, 507

F.3d at 199 (noting that, in determining whether the CAFA threshold has been met, "[f]ees could be as much as thirty percent of the judgment"). Thus, the addition of attorneys' fees to the amount in controversy increases the amount by another 30 percent. Here, as to just the liquidated damages alleged at $1,000, multiplied by 14,539 claims, the corresponding attorneys' fees valued at 30 percent of a class action judgment could total $4,361,700.

41.     Finally, injunctive relief also constitutes part of the amount in controversy. *See USAA Cas. Ins.*, 2018 WL 3213324, at *4. Courts focus on the value of the requested relief to the plaintiff. *Id.*; *see also Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (the amount in controversy from injunctive relief is determined by the "value of the object of the litigation" (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). Here, these additional costs—including, for example, the cost of retaining an "independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law" (Ex. 1, Compl. ¶ 63)—would further increase the amount in controversy above the $5 million threshold.

42.     In short, without conceding the validity of Plaintiffs' claims, the face of the Complaint plausibly establishes that the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2).

### 4.    There is minimal diversity.

43.    The Complaint's allegations satisfy the third requirement for removal under CAFA, minimal diversity—meaning that at least one class member is a citizen of a different state from at least one defendant.  28 U.S.C. § 1332(d)(2)(A).

44.    Plaintiffs allege that the Individual Plaintiffs are citizens of the State of New Jersey. (Ex. 1, Compl. ¶¶ 15, 16, 17, 18.)  Further, the Complaint alleges that the putative Assignors "include individuals who reside, work or had previously resided or worked in New Jersey."  (*Id*. ¶ 27.)

45.    Defendant is a Utah limited liability company with a principal place of business is located at 1476 Sandhill Rd., Orem UT 84058. (Kirkham Decl. ¶ 2.)

46.    Because Defendant, on the one hand, and members of the putative class, on the other, are citizens of different states, the minimal diversity requirement under CAFA is met.[6]

### B.    CAFA "Mass Action" Jurisdiction Exists.

47.    In addition, or in the alternative, removal is proper because the instant case is a "mass action" under CAFA.

---

[6] The citizenship of the other Defendants is irrelevant because, for minimal diversity, only one defendant must be diverse from one class member.  28 U.S.C. § 1332(d)(2)(A); *see Lowery v. Ala. Power Co.*, 483 F.3d 1184, n.24 (11th Cir. 2007).

48.     "Congress created the mass action in 2005, when it passed the Class Action Fairness Act (CAFA), a mostly jurisdictional statute." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 318 (3d Cir. 2022).  "CAFA's drafters feared that large-scale state litigation—deemed mass actions and brought under non-class joinder and consolidation rules—would evade CAFA's removal provisions simply because [such] litigation was not pursued under class action rules.  So, Congress included mass-action provisions in CAFA." *Id.* at 318 (citations and quotations omitted).  In other words, "the mass action provision prevents plaintiffs' counsel from avoiding CAFA's expanded federal jurisdiction by simply choosing not to seek class certification." *Lowery*, 483 F.3d at 1194, n.32 ("mass actions are simply class actions in disguise" (quoting S. Rep. No. 109-14 at 47 (2005))).

49.     CAFA defines "class action" to include any "mass action"—which is defined, in turn, as any civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(A), (B)(i).  A district court has "mass action" jurisdiction under CAFA over any of those 100 or more "plaintiffs whose claims in a mass action satisfy the jurisdictional amount" of $75,000.  *Id.*

50.      In short, "mass actions are deemed to be class actions removable under 28 U.S.C. §1332(d)(2)–(10) if they otherwise meet the provisions of those paragraphs." *OptumRX*, 43 F.4th at 319 (citing 28 U.S.C. § 1332(d)(11)(A)).

51.       Accordingly, federal jurisdiction exists under CAFA for a mass action that satisfies (1) the class action requirements of (a) minimal diversity and (b) the $5,000,000 aggregate amount in controversy; (2) numerosity for a mass action; and (3) the $75,000 individual amount in controversy requirement.  The CAFA mass action requirements are also satisfied here.

### 1.    This action meets the mass action requirements of CAFA.

52.      "[U]nder § 1332(d)(11), a mass action 'will be treated as a class action for jurisdictional purposes. Thus, if such a civil action met the other diversity jurisdictional prerequisites set forth for class actions in [CAFA], that civil action would be subject to federal jurisdiction.'" *OptumRX*, 43 F.4th at 324 (quoting S. Rep. No. 109-14 at 46 (2005)).

53.      As explained above, there is minimal diversity between the parties, *see supra* ¶¶ 44–46; and the aggregate amount in controversy exceeds $5 million, *see supra* ¶¶ 36–38.  Therefore, the class action requirements for mass actions under CAFA are satisfied.

## 2. The action seeks monetary relief for 100 or more persons.

54.    Under CAFA, "the term 'mass action' means any civil action . . . in which *monetary relief claims of 100 or more persons* are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

55.    The question for mass actions "is not whether 100 or more plaintiffs answer a roll call in court, but whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than *100 separate claims* involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

56.    In the Third Circuit:

> It is blackletter law that "*the assignee steps into the shoes of the assignor.*" 29 Williston on Contracts § 74:56 (4th ed. 1999) ("Simply stated, the assignee steps into this pair of the assignor's shoes absolutely…"). As a result, "[a]n assignee's right against the obligor is subject to all…defenses thereto…" Restatement (First) of Contracts § 167(1)(1932). These defendants include not only defenses to the merits of the claim, but *defenses based on where and how the claims may be prosecuted*. For instance, if an assignor may only press a claim through arbitration, the same constraint will apply to the assignee.

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2020 WL 5211035, at \*11 (E.D. Pa. Sept. 1, 2020) (emphasis added).

57.     Based on these fundamental contractual principles, the Third Circuit has found that "assignees can be counted as class members when evaluating" numerosity requirements. *Id.* at \*10 (citing *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251–52 (3d Cir. 2016) and *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1091 (3d Cir. 1980)).  The Court should reach the same result.

58.     Here, Atlas brings each claim for relief on behalf of 14,532 separate, allegedly identified Assignors, in addition to the seven other Plaintiffs who assert claims on their own behalf.  (*E.g.*, Ex. 1, Compl. ¶¶ 15–23, 25.)  More precisely, Atlas only has standing to sue (if at all) as an alleged assignee for each individual Assignor.  *Supra* ¶¶ 28–29; *see* N.J.S.A. §§ 56:8-166.1(b), (d).  Because Atlas "steps into the shoes of" each putative Assignor, Defendant retains all defenses they may have had against any putative Assignor, including "where and how the claims may be prosecuted." *Winn-Dixie*, 2020 WL 5211035, at \*11.  Absent the alleged assignments, the case would be removable under CAFA.

59.     Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass action numerosity element is satisfied.

**3.    The individual amount in controversy exceeds $75,000.**

60.    CAFA states that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [i.e., of more than $75,000].'" *Haley v. AMS Servicing, LLC*, No. 13- 5645, 2014 WL 2602044, at *4 (D.N.J. June 11, 2014) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)).

61.    Courts interpreting this requirement have held that federal jurisdiction exists in a mass action under CAFA where "Defendants have shown that *at least one* individual has a claim where the amount in controversy is greater than $75,000." *Id.* at *4–5 (emphasis added) ("Defendants have also shown that some number of individual Plaintiffs place greater than $75,000 at issue.  Thus, there is CAFA jurisdiction over this action…").

62.    Here, each alleged claim appears to exceed $75,000.  As explained above, for purposes of the amount in controversy, Plaintiffs are seeking $1,000 per violation (at a minimum) plus $5,000 in punitive damages per claim. *Supra* ¶ 38. Thus, each of the 14,359 individuals (Individual Plaintiffs and purported Assignors) seeks a total $6,000 (at a minimum) for each claim, which against 21 defendants results in potential liquidated and punitive damages of $126,000 for each individual's claim— well over the $75,000 amount in controversy requirement. *Id.*

63.     Moreover, as explained above, the Complaint seeks attorneys' fees and injunctive relief, which further increases the individual amount in controversy for each alleged claim.  *See supra* ¶¶ 40-41.

64.     Accordingly, the Complaint alleges individual matters in controversy that exceed $75,000 for each alleged putative Assignor and Individual Plaintiff, and therefore satisfies the jurisdictional amount for a mass action under CAFA.

##### C.     Diversity Jurisdiction Exists.

65.     This Court additionally has traditional diversity jurisdiction over this case under 28 U.S.C. § 1332(a), whereby a federal district court has original jurisdiction when the amount in controversy exceeds $75,000 and the action is between citizens of different states.  28 U.S.C. § 1332(a).

66.     Each of the requirements of diversity jurisdiction is met here because (i) there is complete diversity of citizenship between Defendant, on the one hand, and the Individual Plaintiffs and alleged putative Assignors, on the other hand; (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iii) all other requirements for removal have been satisfied.

##### 1.     There is diversity of citizenship.

67.     This action satisfies the complete diversity requirement of 28 U.S.C. § 1332(a)(1) because the matter in controversy is between citizens of different states.

68.    Defendant is organized under the laws of Utah with its principal place of business located at 1476 Sandhill Rd., Orem, UT 84058.  (*See* Kirkham Decl. ¶¶ 2–3.)  Defendant is thus a citizen of Utah for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(1).

69.    Each of the Individual Plaintiffs is allegedly a current or former New Jersey law enforcement officer, who "lives" and/or "work[s]" in New Jersey.  (Ex. 1, Compl. ¶¶ 15–23); *see* N.J. Stat. § 40A:14-122.8 ("[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position").  Accordingly, each of the Individual Plaintiffs is a citizen of New Jersey.

70.    Finally, the Complaint alleges that the alleged putative Assignors (i.e., purported covered individuals) include individuals who reside and/or work in New Jersey.  (Ex. 1, Compl. ¶ 26); *see* N.J.S.A. § 56:8-166.1 ("'Covered person' means an active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator . . . , or prosecutor and any immediate family member residing in the same household…").

71.    Although Atlas appears as a plaintiff in the case caption, again, it only brings this suit in its capacity as the purported "assignee of the claims of approximately 14,532 individuals" (Ex. 1, Compl. ¶ 25) and does not bring any

claim in its individual capacity.  Therefore, its citizenship must be disregarded for purposes of diversity jurisdiction.

72.     Indeed, when a plaintiff "create[s] or destroy[s] diversity jurisdiction by making a transfer which is an assignment in name only . . . the plaintiff tampers with the jurisdiction of the court by artificially affecting it." *Attorneys Tr. v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 595 (9th Cir. 1996).

73.     Congress prohibited such tampering to create jurisdiction, providing that: "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  28 U.S.C. § 1359.  And these "informing principles are much the same" when a plaintiff attempts to destroy diversity jurisdiction through assignment. *Attorneys Trust*, 93 F.3d at 595.  In other words,

> [T]here is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner. . . . In either event, another party is deprived of a forum to which he would otherwise be entitled, and the jurisdiction which Congress conferred upon the federal courts is manipulated.

*Id.* at 598; *see also Grassi*, 894 F.2d at 185 ("assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard").  Therefore, courts disregard an entity's citizenship when the entity has

"no legitimate and independent interest in the litigation." *Grassi*, 894 F.2d at 185

(disregarding citizenship of entity that was "simply providing litigation support

services on a contingent fee arrangement at the behest of the appellants' attorney").

74.     In assessing whether an assignee's citizenship should be disregarded

for purposes of diversity, courts are permitted to "look beyond the four corners of a

complaint" and independently consider the "factual predicates . . . for [the court's]

subject matter jurisdiction." *Erie Ins.*, 68 $^{F.}$4th at 820 (citing *Davis v. Wells Fargo*,

824 F.3d 333, 346 (3d Cir. 2016)).

75.     Here, upon information and belief, the alleged assignments were in

part to avoid federal jurisdiction.  By bringing a substantive class action on behalf

of approximately 14,532 alleged New Jersey citizens through a putative

assignment to a Delaware corporation, Atlas seeks to prevent removal of the action

by another Delaware corporation.  In fact, only after Daniel's Law was passed was

Atlas conveniently incorporated in Delaware, the same state of incorporation as

many of the 140-plus defendants Atlas has sued.  Atlas appears to be primarily

providing litigation support services to the putative Assignors—who are alleged to

work or reside in New Jersey, who seek to avail themselves of rights afforded to

certain New Jersey individuals, and who each bring a single claim each under a

New Jersey law.  In these circumstances, the Court should disregard the citizenship

of Atlas and rely upon the citizenship of the alleged putative Assignors to determine jurisdiction.

76.    In any event, even were the Court to consider Atlas's citizenship, complete diversity is still present with respect to Defendant. Atlas is alleged to be a Delaware corporation with a principal place of business in New Jersey.  As noted above, Defendant is a Utah Limited Liability Company with it's principal place of business in Utah.

77.    Thus, because Defendant is a citizen of Utah and the Individual Plaintiffs and alleged putative Assignors are allegedly citizens of New Jersey, and Atlas purports to be a Delaware corporation with offices in New Jersey, complete diversity of citizenship exists under 28 U.S.C. § 1332(a)(1).

## 2.    The alleged amount in controversy exceeds $75,000.

78.    Based on the allegations of the Complaint, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).

79.    For purposes of diversity jurisdiction, the Court again need only find that the amount in controversy exceeds $75,000 for a *single plaintiff* to exercise jurisdiction over the entire action. Indeed, so long as "at least one named plaintiff in the action satisfies the amount-in-controversy requirement," the court may take "supplemental jurisdiction over the claims of other plaintiffs . . . , even if those

claims are for less than the jurisdictional amount." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *see also Burgess v. Bennet*, No. 20-7103, 2021 WL 1050313, at *5 n.9 (D.N.J. Mar. 19, 2021) ("although these particular plaintiffs' claims may not reach the amount in controversy, so long one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims").

80.     As set forth above, the amount in controversy well exceeds $75,000 for each of the individuals (i.e., Individual Plaintiffs and putative Assignors). *Supra* ¶¶ 62–64.  The Complaint alleges potential liquidated and punitive damages of $132,000 for each individual's claim; and it seeks attorneys' fees and injunctive relief, which further increases the individual amount in controversy for each alleged claim.  *Supra* ¶¶ 39-41, 62–64.

81.     Thus, because the parties are completely diverse and the amount in controversy exceeds $75,000, traditional diversity jurisdiction exists over this action.

## V.     VENUE IS PROPER.

82.     Removal to this Judicial District is proper because this District includes the County of Mercer, where the action is currently pending.  *See* 28 U.S.C. § 110; 28 U.S.C. § 1441(a).

## VI.    CONCLUSION

83.     Based on the foregoing, Defendant removes the civil action filed in the Superior Court of New Jersey, Mercer County, Law Division, to the United States District Court for the District of New Jersey.

84.     Defendant reserves the right to amend and/or supplement this Notice of Removal.

### LOCAL CIVIL RULE 11.2 STATEMENT

Pursuant to Local Civ. Rule 11.2, the undersigned counsel, on behalf of Defendant, certifies that the matter in controversy is not subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

//

//

//

//

//

//

//

//

//

//

Dated: July 26, 2024
      New York, New York

          Respectfully submitted,

          MANATT, PHELPS & PHILLIPS, LLP

          */s/ Kenneth D, Freidman*
          By: Kenneth D. Friedman
          7 Times Square
          New York, New York 10036
          (212) 790-4500
          *kfriedman@manatt.com*

          Brandon Reilly (*pro hac vice* forthcoming)
          695 Town Center Drive, 14th Floor,
          Costa Mesa, CA 92626
          (714) 338-2701
          *breilly@manatt.com*

          Kayla LaRosa (*pro hac vice forthcoming*)
          One Beacon St., Suite 28
          Boston, MA 02018
          (617) 646-1424
          *klarosa@manatt.com*

          *Attorneys for Defendant*
          *Smarty, LLC* d/b/a *SmartyStreets, LLC*

## CERTIFICATE OF SERVICE

KENNETH D. FRIEDMAN, hereby certifies:

I am an attorney-at-law of the State of New Jersey and a partner in the law firm Manatt, Phelps & Phillips, LLP, counsel for Defendants Smarty, LLC *d/b/a* SmartyStreets, LLC ("Defendant") in the above-captioned matter.

On July 26, 2024, true and correct copies of Defendant's Notice of Removal with Civil Cover Sheet, the accompanying Declaration of Lori Kirkham in support of same, and Defendant's Rule 7.1 Disclosure Statement were filed electronically with the Court, and copies of same were sent via e-mail to the following counsel:

PEM LAW, LLP
Rajiv D. Parikh
1 Boland Drive, Suite 101
West Otange, New Jersey 07052
Tel.: (973) 577-5500
rparikh@genovaburns.com

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ *Kenneth D. Friedman*