# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br>   Plaintiffs, <br> v. <br>INFOMATICS, LLC, et al., <br>   Defendants. | Civil Action No.: 1:24-cv-04041-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br>   Plaintiffs, <br> v. <br>THE PEOPLE SEARCHERS, LLC, et al. <br>   Defendants. | Civil Action No.: 2:24-cv-04045-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br>   Plaintiffs, <br> v. <br>WE INFORM, LLC, et al., <br>   Defendants. | Civil Action No.: 2:24-cv-04037-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br>   Plaintiffs, <br> v. <br>SMARTY, LLC, et al., <br>   Defendants. | Civil Action No.: 2:24-cv-08075-HB |

## DEFENDANTS' REPLY TO THE NEW JERSEY ATTORNEY GENERAL'S BRIEF ON FEDERAL PREEMPTION

Robert T. Szyba
Max A. Scharf
SEYFARTH SHAW
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

*Attorneys for Defendants Infomatics, LLC, The People Searchers, LLC, and We Inform, LLC*

Kenneth D. Friedman
Matthew F. Bruno
Brandon P. Reilly (*pro hac vice*)
MANATT, PHELPS & PHILLIPS
7 Times Square
New York, New York 10036
(212) 790-4500

*Attorneys for Defendants Smarty, LLC and SmartyStreets, LLC*

319197761v.6

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

LEGAL ARGUMENT ...........................................................................................3

I. Defendants Are Interactive Computer Services. .............................................3

II. Defendants Are Not Information Content Providers......................................5

III. Defendants Received Publicly-Available Information That Was Intended to Be Published.. ...............................................................................................8

CONCLUSION ....................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. TikTok*,
   116 F.4th 180 (3d Cir. 2024) ........................................................................... 6, 8

*Anthony v. Yahoo! Inc.*,
   421 F. Supp. 2d 1257 (N.D. Cal. 2006) ................................................................ 7

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .............................................................................. 9

*Dennis v. MyLife.Com, Inc.*,
   2021 WL 6049830 (D.N.J. Dec. 20, 2021) ................................................. 3, 4, 6, 9

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) .................................................................. 7

*Dwyer v. Oceanport Sch. Dist.*,
   No. 03-cv-6005¸ 2005 WL 8176151 (D.N.J. Mar. 31, 2005) .............................. 4

*Elliott v. Donegan*,
   469 F. Supp. 3d 40 (E.D.N.Y. 2020) .................................................................... 9

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) .............................................................................. 7

*FTC v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009) ............................................................................ 7

*Metroka v. Pa. State L. Enf't*,
   No. 23-cv-601, 2023 WL 3767745 (E.D. Pa. June 1, 2023),
   *aff'd*, 2024 WL 4164272 (3d Cir. Sept. 12, 2024) ...................................... 6, 9, 10

*Metroka v. Pennsylvania Law Enforcement*,
   2024 WL 4164272 (3d Cir. Sept. 12, 2024) ......................................................... 9

*Obado v. Magedson*,
   No. 13-cv-2382, 2014 WL 3778261 (D.N.J. July 31, 2014), *aff'd*
   612 F. App'x 90 (3d Cir. 2015) ............................................................................ 6

*Smith v. Trusted Universal Stds. in Elec. Transactions, Inc.*,
 No. 09-cv-4567, 2011 WL 900096 (D.N.J. Mar. 15, 2011)..................................4

**Statutes**

Communications Decency Act of 1996, 47 U.S.C. § 230 ................................*passim*

Defendants Infomatics, LLC ("Infomatics"), The People Searchers, LLC ("People Searchers"), We Inform, LLC ("We Inform"), Smarty, LLC and SmartyStreets, LLC ("Smarty" and, collectively, "Defendants") respectfully submit this reply to the New Jersey Attorney General's (the "AG") brief in opposition to Defendants' Motion to Dismiss on Preemption. (ECF No. 77 (the "AG Br.").)[1]

## **INTRODUCTION**

In its June 9, 2025 order, the Court invited the AG to submit a supplemental brief to address, among other things, Defendants' defenses under the Communications Decency Act ("CDA") and whether the CDA immunizes Defendants from liability under Daniel's Law.[2] In response, the AG fails to articulate any legal or factual basis against the CDA's application.

To begin, ignoring settled Third Circuit precedent, the AG argues that the first prong of the CDA is not met, because Defendants (all of whom operate as websites) somehow do not qualify as "interactive computer service" providers—an argument that has been soundly rejected time and again in this Circuit. Indeed, even Plaintiffs seem to agree, as they conceded this very point in their Opposition (ECF No. 55

---

[1] Unless otherwise indicated, citations to "ECF __" refer to the docket entries in *Atlas Data Privacy Corp., et al. v. We Inform, LLC*, No. 24-cv-4037. Capitalized terms have the same meaning ascribed to them as in Defendants' Opening and Reply Briefs.

[2] The AG's brief makes arguments related to the Communications Decency Act, National Voter Registration Act, and Federal Credit Reporting Act. Defendants' present brief only addresses the CDA.

1

("Opp'n")."); (*see also* Compl. ¶ 38 ("Defendants offer and engage in the disclosure of data and information through one or more websites . . . Those websites include: weinform.org").)

Relying entirely on out-of-circuit authority, the AG separately argues that the CDA does not apply, because Defendants are responsible for creating or contributing to the creation of "improper content." This argument, however, is belied by the allegations of the Complaints, as well as Plaintiffs' own position on this score—who have acknowledged that "there is no question that the published content . . . is true and accurate" and "there is nothing inherently wrong about the content itself." (Opp'n at 49.) This, in turn, renders wholly inapposite the laundry-list of non-precedential authority, in which courts have declined to extend CDA immunity to websites involved in, among other things, posting child pornography, encouraging users to publicly discuss discriminatory preferences, and soliciting information through illegal channels. The authority from *this* Circuit, however, makes clear that, where, as here, defendants merely arrange and display another's content, the CDA applies. Rather than address this controlling authority, the AG avoids any meaningful discussion entirely.

Finally, the AG raises new arguments not previously advanced by Plaintiffs—arguing that there is "no basis to concluded [*sic*] that the information they posted on their websites was provided to them for disclosure on the Internet." But, their own

2

authority confirms that this is a non-issue here, given that the information Defendants received was publicly available. Indeed, this Court in *Dennis v. MyLife.Com, Inc.*, 2021 WL 6049830 (D.N.J. Dec. 20, 2021) held that another website that posted similar information (contact information and property records) was entitled to CDA immunity. Not only does the AG effectively ignore the *MyLife* decision, but it fails to cite any other authority to the contrary. For these reasons, and the reasons discussed further below, the Court should dismiss the Complaints pursuant the CDA.

## LEGAL ARGUMENT

### I. Defendants Are Interactive Computer Service Providers.

This entire litigation is premised on Plaintiffs suing companies that "disclose" certain information through their websites. Recognizing this, Plaintiffs did not dispute, and therefore concede, that Defendants are "interactive computer services." (*See* Opp'n at 47-52 (challenging the second and third prongs of Section 230 immunity).) Despite this, the AG argues that "Defendants have not offered any facts to establish that they are interactive computer services." (AG Br. at 17.) Not so.

As it must, the AG acknowledges that each of the Defendants operate websites that offer various services—from background checks to address verifications. (AG Br. at 4-5.) For purposes of this first prong, this tells the Court all that it needs to know, because "*[w]ebsites are considered interactive computer services*." *Smith v.*

*Trusted Universal Stds. in Elec. Transactions, Inc.*, No. 09-cv-4567, 2011 WL 900096, at *5 (D.N.J. Mar. 15, 2011) (applying CDA immunity to Cisco based on its use and operation of its website) (emphasis added).  Indeed, courts in this District have repeatedly extended CDA immunity to websites, as an interactive computer service, "because they allow numerous users to access and use their services such as searchable databases." *Id.* (collecting cases); *see also Dennis v. MyLife.Com, Inc.*, No. 20-cv-954, 2021 WL 6049830, at *6 (D.N.J. Dec. 20, 2021) (accord); *Dwyer v. Oceanport Sch. Dist.*, No. 03-cv-6005¸ 2005 WL 8176151, at *4 (D.N.J. Mar. 31, 2005) ("a website creator . . . should be deemed a 'provider' of an 'interactive computer service.'") (applying CDA immunity).  Indeed, this very argument was flatly rejected by Judge Cecchi in *MyLife*, in which the Court explained that (as is the case here) because the defendant "enables consumers to access and search through various databases on its website, it constitutes an interactive computer service provider, and the first requirement is met." *MyLife.Com*, 2021 WL 6049830, at *6; *see also Smith*, 2011 WL 900096, at *5 ("[B]ecause www.senderbase.org is a website, it is an interactive computer service within the meaning of Section 230.").

Consistent with this Court's precedent, because there is no dispute that Defendants each operate websites (which is the linchpin to Plaintiffs' claims), the first prong of the CDA is clearly satisfied.

4

## II. Defendants Are Not Information Content Providers.

The AG next argues that because Defendants are "content providers," the CDA does not apply. (AG Br. at 16.) As support, the AG claims that Defendants "developed" the "improper content" by "compiling and collating" covered persons' information from several sources. (*Id*. at 18-20) (internal quotations and brackets omitted). But, this argument fails for any number of reasons.

*First*, nowhere in any of the Complaints against We Inform, Infomatics, People Searchers, or Smarty are there allegations that support the AG's contention that any of these defendants "compile" or "collate" covered persons' information. Indeed, Paragraphs 38-40 and 58-63, which the AG cites in support, say ***absolutely nothing*** about Defendants' purported collection, compilation, or collation of covered persons' information.

The AG's unprincipled interpretation of the Complaint is unmissable. The AG is simultaneously arguing the Court cannot join its peers in finding that a "website" is an "interactive computer service" (*see* Section I), but then also insisting that discovery is needed in relation to allegations regarding "compiling," "collating," and "several sources" that are pled *nowhere* in any of the Complaints. As such, given the glaring lack of any factual support, the AG's argument on this score falls flat.

5

***Second***, courts within this Circuit have repeatedly held that where, as is the case here, a provider is responsible for merely arranging, maintaining, or indexing a third-party's information, it is protected by the CDA. *See, e.g.*, *Anderson v. TikTok*, 116 F.4th 180, 184 n.13 (3d Cir. 2024) ("Merely arranging and displaying others' content . . . is not enough to hold a defendant platform responsible as the developer or creator of that content") (quotations and brackets omitted); *MyLife.Com, Inc.*, 2021 WL 6049830, at *1, *6 (accord); *Metroka v. Pa. State L. Enf't*, No. 23-cv-601, 2023 WL 3767745, at *2 (E.D. Pa. June 1, 2023) (Sanchez, C.J.) (the CDA barred plaintiff's claim that Google unlawfully "indexed" and "maintained" information about plaintiff's criminal arrest), *aff'd*, 2024 WL 4164272 (3d Cir. Sept. 12, 2024); *Obado v. Magedson*, No. 13-cv-2382, 2014 WL 3778261, at *5 (D.N.J. July 31, 2014) ("search engines play no part in the 'development'" of the information being searched), *aff'd* 612 F. App'x 90 (3d Cir. 2015).

This Court's decision in *MyLife* is instructive. There, the plaintiff advanced a similar argument as the AG does here—arguing that the CDA did not apply because the defendant "created the reputation scores on its website." 2021 WL 6049830, at *6-7. In rejecting this argument, Judge Cecchi highlighted the fact that "the reputation scores appear to derive solely from information generated by third parties" and, therefore, afforded the defendant CDA immunity. *Id.* The same is true here—neither the AG nor Plaintiffs can dispute the fact that the information at-issue

6

(namely telephone numbers and home addresses) is not information that Defendants created or modified, but rather information in its entirety originated from other third parties.

The AG makes a great effort to bury its reference to the *MyLife* decision in a footnote (*see* AG Br. at 24 n.14) with a dismissive comment that *MyLife* is "contrary" to the case law. How? Why? Of course, no explanation is provided as to why the Court should ignore this District's prior ruling on nearly identical facts, as there is no non-frivolous argument the AG can make here.[3]

***Third***, this belated excuse that Defendants were "collating" or "compiling" information (again, notably, an allegation <u>not mentioned anywhere in the Complaint</u>) is a red herring. Indeed, this appears to be a rhetorical and conceptual argument that

---

[3] Furthermore, as Plaintiffs' own opposition acknowledges, Defendants are not accused of creating or modifying "improper content" and "there is no question that the published content . . . is true and accurate." (Opp'n 48-49.) This, in turn, renders entirely inapposite the bevy of caselaw cited by AG, in which the defendants were allegedly involved in the solicitation and/or creation of inherently unlawful conduct. *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 841 (C.D. Cal. 2021) (Defendants directed users to categorize their videos using coded language for child pornography and to title their videos in a manner to target individuals interested in child pornography); *Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257, 1262-63 (N.D. Cal. 2006) (Defendant accused of creating false profiles "for the purpose of luring them into renewing their subscriptions."); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009) (Defendant solicited confidential information that it knew was obtained through fraud or other illegality); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (Defendant accused of encouraging subscribers to publicly share their discriminatory preferences).

7

is completely divorced from actual reality. Plaintiffs' claims are based on disclosure of two—and only two—bits of information: (1) their addresses, and (2) their phone numbers. It is plain common sense that none of the Defendants in this litigation created, collated, complied someone else's phone number or home address. The whole premise of this case is that a phone number and/or address—a finite and specific piece of information; no more, no less—was somehow "disclosed." Daniel's Law has nothing to do with whether that information was organized, collated, or assembled in any particular fashion, or combined with any other information. If Defendants provided content on their websites other than Plaintiffs' addresses or phone numbers—*e.g.*, the AG references Defendants' "privacy policies" on their websites—that has nothing to do with Plaintiffs' claims. Their claims are based on disclosure of phone numbers and addresses, not anything else, and such information could not have originated from Defendants.

At bottom, none of the AG's out-of-circuit authority supports its contention that CDA immunity is inapplicable for businesses, such as Defendants, that "[m]erely arrang[e] and display[] others' content." *Anderson*, 116 F.4th at 184 n.13.

## III. Defendants Received Publicly-Available Information That Was Intended to Be Published.

Finally, the AG argues that because there is no evidence that the information at issue—home addresses and telephone numbers—was intended to be disclosed on the Internet, CDA immunity cannot attach. (AG Br. at 21-22.) As support, the AG

8

319197761v.6

relies upon the Ninth Circuit's decision in *Batzel v. Smith*, where the Court held that CDA immunity should not extend to information that is provided to a publisher "in a capacity ***unrelated*** to their function as a provider or user of interactive computer services." 333 F.3d 1018, 1033 (9th Cir. 2003) (emphasis added); *see also Elliott v. Donegan*, 469 F. Supp. 3d 40, 58 (E.D.N.Y. 2020) (declining to extend CDA immunity to third party defamatory statements that may have been made in confidence). That is not the case here since the information at-issue was already publicly available and provided to Defendants in their capacity as an interactive computer services provider. This Court's decision in *MyLife* reinforces this point, holding that the disclosure of similar information—property records and contact information—was covered by the CDA. *See* 2021 WL 6049830, at *1, 5-7.

In fact, just last year, the Third Circuit affirmed dismissal of similar claims, arising from similar facts, based on the CDA's application. *See Metroka v. Pennsylvania Law Enforcement*, 2024 WL 4164272 (3d Cir. Sept. 12, 2024). Like Defendants here, in *Metroka* the defendant (Google) obtained criminal arrest information regarding the plaintiff from a public source. *See* 2024 WL 4164272, at *1 (Google obtained the arrest information from a "Crimewatch website"); *see also* AG Br. at 23 (acknowledging that that "Defendants obtained the information from public sources on their own."). In affirming Chief Judge Juan R. Sanchez's decision granting dismissal, the Third Circuit focused on the following

9

salient facts: (i) Google is a website; (ii) plaintiff sued Google for disclosing her personal information; and (iii) Google obtained her personal information from a public source (*i.e.*, it did not originate from Google). As set forth above and in Defendants' Opening and Reply Briefs, each of these facts are present here and, consistent with Third Circuit precedent, supports the CDA's application.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court reject the arguments set forth in the AG's brief, and dismiss the Complaints with prejudice for failure to state a claim under Federal Rule 12(b)(6).

Dated: July 28, 2025                SEYFARTH SHAW LLP

By: */s/ Robert T. Szyba*
    Robert T. Szyba
    Max A. Scharf
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526
    rszyba@seyfarth.com
    mscharf@seyfarth.com

*Attorneys for Defendants Infomatics, LLC,
The People Searchers, LLC, and We Inform, LLC*

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Kenneth D. Friedman*
    Kenneth D. Friedman
    Matthew F. Bruno
    7 Times Square
    New York, New York 10036
    Telephone:  (212) 790-4500
    Facsimile: (212) 790-4545
    kfriedman@manatt.com
    mbruno@manatt.com

    Brandon P. Reilly (*pro hac vice*)
    One Embarcadero Center, 30th Floor
    San Francisco, California 94111
    Telephone:  (415) 291-7400
    Facsimile: (415) 291-7474
    breilly@manatt.com

*Attorneys for Defendants Smarty, LLC and SmartyStreets, LLC*